# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| HOLLY ANDREN,<br><br>            Respondent,<br><br>     v.<br><br>WAYNE DAKE and Jane or John "Doe" Dake, spouses, and the marital community composed thereof,<br><br>            Appellants. | DIVISION ONE<br><br>No. 79423-0-I (consol. with No. 79585-6-I)<br><br>UNPUBLISHED OPINION |

DWYER, J. — After the jury returned a defense verdict in this negligence action, in which the defendant admitted liability for the motor vehicle collision at issue, the trial court granted the plaintiff's motion for a new trial, declaring that it was "in a position in which it cannot definitively state that the trial in this matter was a fair one."  This appeal concerns whether the trial court's findings, which detail Dake's trial counsel[1] engaging in rampant misconduct, adequately support the order granting Andren's motion for a new trial.  We affirm the new trial order because the order sets forth extensive findings regarding Dake's trial counsel's misconduct and those findings more than adequately support the order.  We also affirm the trial court's award of attorney fees to Andren and award Andren attorney fees on appeal.

---

[1] Dake's trial counsel was Alan Singer, from the Law Offices of Todd A. Bowers & Associates.  Different attorneys represent Dake on appeal.

I

On May 11, 2016, Wayne Dake accidentally backed his truck into Holly Andren's car. After approximately a year of receiving treatment for the resulting injuries, Andren filed a lawsuit against Dake, alleging severe personal injuries due to Dake's negligence while operating his vehicle. In response, Dake admitted that he was responsible for the collision, but disputed whether the collision caused Andren's claimed injuries.

From its early stages, the litigation was highly contentious, so much so that the trial court felt it necessary to attach the Washington State Bar Association Creed of Professionalism to one order resolving a discovery dispute. Later, during a hearing in which the court considered the parties' many motions in limine, Dake's trial counsel commented that he was seeking to defend his client "from greedy personal injury lawyers," prompting the court to explicitly warn counsel that "gratuitous comments like that" would not be tolerated in front of the jury and must "stop[] right now."

Dake's trial counsel's behavior, however, did not improve at trial. On multiple occasions he violated evidence rules and the trial court's prior rulings on motions in limine, made improper and gratuitous comments, and attempted to persuade the jury to reach a verdict based on improper considerations. After repeated violations of its previous orders, the trial court actually pleaded with Dake's trial counsel to stop, saying "Please, I do not—I don't want to impose sanctions and I've heard all sorts of apologies as we've gone through this, but please listen to the Court's orders."

At the conclusion of trial, the jury returned a verdict for Dake. The trial court entered judgment against Andren in the amount of $600.16 for costs. Andren then successfully moved for a new trial, asserting that Dake's counsel's misconduct had prevented her from obtaining a fair trial. The trial court agreed and entered an order granting a new trial. In support of this order, the trial court made the following findings:

> During the course of the trial, defense counsel repeatedly violated Evidence Rules and the Court's rulings on Motions in Limine, including rulings on Motions in Limine presented by the defense. At least, three times, the Court admonished defense counsel because of his behavior during the trial. Warnings included references to how hard all in the courtroom had worked to get the case to trial and the possibility of a mistrial. Despite these admonitions, defense counsel persisted in improper behavior into closing arguments on October 25, 2018. In fact, the Court admonished defense counsel a final time during his closing argument because of improper arguments made when a break was taken and the jury was out of the courtroom.
>
> Examples of misconduct in the record include, but are not limited to, the following:
>
> **Cross Examination of Dr. Frank Marinkovich**
>
> [Finding #1[2]](1) During cross examination of Plaintiff's expert, Dr. Frank Marinkovich on October 18, 2018, at 10:19:39 AM, defense counsel asked "so, if the plaintiff's actual treating physician, like a treating doctor like Dr. Betteridge doesn't or isn't willing to offer an opinion, that's where you get involved, right?" This was in violation of an in limine ruling regarding the circumstances of attorney retention of expert witnesses.
>
> [Finding #2](2) During cross examination of Plaintiff's expert Dr. Frank Marinkovich on October 18, 2018 at 10:21:11, defense counsel referred stipulated defense medical examinations as examinations "pursuant to court rules" in direct violation of a motion in limine ruling addressing how these examinations were to be

---

[2] Dake only presents argument concerning the 14 listed specific examples of misconduct. For ease of reference, and because the trial court did not consecutively number all 14 of them, we have added such numbers.

referenced.

[Finding #3](3) During cross examination of Plaintiff's expert Dr. Frank Marinkovich on October 18, 2018 at 10:21:50, defense counsel improperly asked if the witness had "negative opinions" of defense doctors Klein and Jackson.

[Finding #4](4) During cross examination of Plaintiff's expert Dr. Frank Marinkovich on October 18, 2018 at 10:25:55, defense counsel improperly asked the witness if he had tried to talk with his two retained doctors, Dr. Klein and Dr. Jackson about their differing opinions about the plaintiff when he knew or, should have known, that opposing expert witnesses do not have such contact.

[Finding #5](5) During cross examination of Plaintiff's expert Dr. Frank Marinkovich on October 18, 2018, in response to a sustained objection and the Court's direction to ask another question, defense counsel responded saying something to the effect of its okay, I made my point.

[Finding #6](6) During cross examination of Plaintiff's expert Dr. Frank Marinkovich on October 18, 2018 at 11:57:31AM in responding to the witness's stating that he would be happy to review medical records defense counsel was asking about, defense counsel inappropriately and gratuitously stated, "You'll have to ask Holly Andren for that." This was an improper inference that Plaintiff Holly Andren did not provide Dr. Marinkovich with all relevant records.

## Cross Examination of Plaintiff Holly Andren

[Finding #7](1) During cross examination of Plaintiff Holly Andren on October 23, 2018 at 9:23:29 AM, defense counsel inquired of Ms. Andren about a collision in 2001 or 2002 in direct violation of the Court's ruling prohibiting such an inquiry.

[Finding #8](2) During cross examination of Plaintiff Holly Andren on October 23, 2018 at 10:14:55 to 10:15 AM, defense counsel attempted to introduce into evidence a photograph of a car part from an EBay advertisement that had not been provided to plaintiff's counsel for review and without proper foundation to establish that the part shown in the photograph was actually a part that was damaged in the collision at issue. This inquiry led to Plaintiff's need to refer to car repair documentation that the Court previously ruled was not to be referenced.

[Finding #9](3) During cross examination of Plaintiff Holly Andren on October 23, 2018 at 11:43:10 AM, defense counsel inquired of Ms. Andren about medical history. In this exchange, he inappropriately and gratuitously stated, "You have a photographic memory too."

[Finding #10](4) During cross examination of Plaintiff Holly Andren on October 23, 2018 at 11:53:34 AM, defense counsel continued in inquiring of Plaintiff about whether a damaged part was steel or aluminum. She repeatedly stated that she did not even know what the part was that he was referring to. Defense counsel then improperly interjected, "You want the jury to think it is steel, right?"

### Direct Examination of Dr. Steven L. Klein

[Finding #11](1) During direct examination of Defendant's expert Dr. Steven Klein on October 23, 2018 at 2:55:44 PM, defense counsel sought to inquire about mood disorder medications that had specifically been ruled as inadmissible in pretrial rulings.

[Finding #12](2) During direct examination of Defendant's expert Dr. Steven Klein on October 23, 2018 at 3:38:36 PM, defense counsel inquired about his opinions that Plaintiff did not sustain a facet joint injury in the collision at issue. In responding, Dr. Klein referenced several white papers including the Quebec Whiplash Study and a Lithuanian study which referenced "people in Lithuania where there is no concept of injury or secondary gain/whiplash." This response led to the Court's having the jury leave the courtroom to address what was a clear violation of the Court's rulings on Motions in Limine with regard to what defendant's experts could reference. In discussing this outside the presence of the jury, defense counsel agreed at 3:44:25 PM that Dr. Klein went over something that he should not have, but indicated that he did not expect the response. Defense counsel had an obligation to apprise his witnesses of the Court's pre-trial rulings. Ultimately, the Court opted to continue with trial. When the jury returned, the Court instructed them at 3:52:45 PM as follows:
> Members of the jury, there has been no evidence presented that claims were brought in this case for any improper purpose as referenced by Dr. Klein's speaking of a Lithuanian study in his recent testimony.

### Defense Counsel's Closing Argument

[Finding #13](1) At 10:15:19 AM on October 25, 2018, defense counsel in closing argument stated at certain points that his client

Mr. Dake, "wishes he could undo this for sure" and "that he [Mr. Dake] felt terrible." Less than a minute later, at 10:15:56 AM, defense counsel referenced his client, Mr. Dake and said "He is sorry. He is very sorry. He has been sitting in trial for two weeks." These references appeared designed to appeal to the sympathy and prejudice of jurors and were in violation of the Court's ruling on Plaintiff's Motion in Limine # 16.

[Finding #14](2) At 11:03:45 AM on October 25, 2018, defense counsel argued that his client Mr. Dake was "staring at Five Hundred Thousand" referencing plaintiff's counsel's argument in which he suggested to the jury that they should consider between two hundred and fifty thousand to five hundred thousand dollars. This was in violation of the Court's ruling on Plaintiff's Motion in Limine # 6 through which defense counsel was prohibited from arguing or inferring that damages would be coming from Mr. Dake's pocket or wallet.

Based on the above referenced violations of the Court's rulings on Motions in Limine, defense counsel's behavior throughout the trial as set forth in the record and defense counsel's repeated violations of ER 103(c) which obligates counsel to prevent inadmissible evidence from being suggested to the jury by any means, the Court finds that defense counsel's behavior constitutes misconduct which forced plaintiff's counsel to repeatedly object to improper questions and unfairly and improperly exposed the jury to inadmissible evidence. . . .

The Court further finds that: (1) the conduct complained of in Plaintiff's motion and/or referenced in this order is misconduct; (2) the misconduct referenced was prejudicial; (3) Plaintiff objected to this misconduct at trial; and (4) the misconduct was not cured by the Court's instructions[]. Furthermore, the cumulative effect of defense counsel's misconduct throughout the trial proceedings . . . casts doubt on whether a fair trial occurred and left the Court in a position in which it cannot definitively state that the trial in this matter was a fair one.

Thereafter, Andren filed a motion seeking an award of attorney fees as a sanction for Dake's counsel's misconduct. The trial court granted this motion, imposing $35,800 in sanctions.

Dake appeals.

6

II

Dake first contends that the order granting a new trial must be reversed because the trial court abused its discretion by concluding that Andren did not receive a fair trial and ordering a new trial based on attorney misconduct. We disagree.

A

"The trial court is in the best position 'to most effectively determine if counsel's misconduct prejudiced a party's right to a fair trial.'" Spencer v. Badgley Mullins Turner, PLLC, 6 Wn. App. 2d 762, 790, 432 P.3d 821 (2018) (quoting Miller v. Kenny, 180 Wn. App. 772, 815, 325 P.3d 278 (2014)), review denied, 193 Wn.2d 1006 (2019). We review a trial court's grant of a new trial premised on attorney misconduct for abuse of discretion. See Teter v. Deck, 174 Wn.2d 207, 215, 274 P.3d 336 (2012) (citing Detrick v. Garretson Packing Co., 73 Wn.2d 804, 812, 440 P.2d 834 (1968)). We require "a much stronger showing of abuse of discretion to set aside an order granting a new trial than one denying a new trial." Teter, 174 Wn.2d at 215. "A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons." Teter, 174 Wn.2d at 215 (citing In re Marriage of Littlefield, 133 Wn.2d 39, 46-47, 940 P.2d 1362 (1997)). Thus, we will only overturn the trial court's order granting a new trial if Dake establishes that "it was not supported in the record or was made under an incorrect standard." Teter, 174 Wn.2d at 222.

We review a trial court's challenged findings of fact for substantial evidence. McCleary v. State, 173 Wn.2d 477, 514, 269 P.3d 227 (2012) (citing

Sunnyside Valley Irrig. Dist. v. Dickie, 149 Wn.2d 873, 879, 73 P.3d 369 (2003)).

"There is a presumption in favor of the trial court's findings, and the party claiming error has the burden of showing that a finding of fact is not supported by substantial evidence." State v. Merrill, 183 Wn. App. 749, 755, 335 P.3d 444 (2014). Substantial evidence is "defined as a quantum of evidence sufficient to persuade a rational fair-minded person the premise is true." Sunnyside, 149 Wn.2d at 879 (citing Wenatchee Sportsmen Ass'n v. Chelan County, 141 Wn.2d 169, 176, 4 P.3d 123 (2000)).

"CR 59(a)(2) provides that a verdict may be vacated and a new trial granted if misconduct of the prevailing party materially affects the substantial rights of the other party." Spencer, 6 Wn. App. 2d at 790. Counsel misconduct that results in the unfair exposure to the jury of inadmissible evidence and prejudices the opposing party qualifies as a material effect on that party's right to a fair trial. Teter, 174 Wn.2d at 225 (citing CR 59(a)). When evaluating whether a party's misconduct warrants a new trial, courts consider the cumulative effect of all instances of misconduct. See Teter, 174 Wn.2d at 223-25 (summarizing repeated violations of evidentiary rules and court orders and concluding that "the cumulative effect of the misconduct warranted a new trial"). Any party requesting a new trial as a result of opposing counsel's conduct generally must establish that (1) the conduct constitutes misconduct, (2) the misconduct was prejudicial, (3) the misconduct was objected to during trial,[3] and (4) the misconduct was not cured by the court's instructions to the jury. Teter, 174 Wn.2d at 226.

---

[3] An objection is not always required, particularly in instances in which the trial court interjects to warn counsel that the behavior engaged in is improper and must cease. See, e.g.,

B

Before even reaching the merits, Dake asserts that we cannot consider any of the trial court's misconduct findings other than those setting forth 14 specifically enumerated examples of Dake's trial counsel's misconduct (Findings #1 through #14). This is so, Dake asserts, because the remaining findings do not comply with CR 59(f), which requires the trial court to set out definite reasons of law and fact for its new trial order to enable appellate review. According to Dake, this rule limits our review to only the 14 specific findings of misconduct he challenges because the trial court's other findings are not sufficiently definite to enable Dake to assign error to them or address them on appeal.[4] We disagree.

While CR 59(f) does require a trial court to set forth definite reasons of law and fact to support an order granting a new trial, the rule does not bar an appellate court from considering anything beyond those reasons when reviewing the order on appeal. Accord Sargent v. Safeway Stores, Inc., 67 Wn.2d 941, 944-45, 410 P.2d 918 (1966) ("[W]here a new trial is granted on specific grounds, this court may consider any grounds or reasons properly presented to the trial court by the party seeking to sustain the new trial, and the court of review should

---

Teter, 174 Wn.2d at 224-25 (explaining that the trial court's repeated admonitions to counsel that she was violating his standing order against speaking objections was supportive of the trial judge's order granting a new trial due to counsel's misconduct).

[4] This argument rings particularly hollow when presented, as it is here, in a brief that fails to assign error to any specific findings of fact as required under our rules. RAP 10.3(g) (requiring a "separate assignment of error for each finding of fact a party contends was improperly made"). While Dake's briefing on appeal does not assign error to any specific findings of fact, we nevertheless consider his assertions regarding the trial court's 14 specific findings of misconduct because the argument section of his brief sufficiently apprises us of the challenged findings to enable review. See, e.g., Yakima County v. E. Wash. Growth Mgmt. Hr'gs Bd., 168 Wn. App. 680, 687 n.1, 279 P.3d 434 (2012) (concluding that review of challenges to factual findings not presented as separate assignments of error was permitted because the argument section of the appellant's brief sufficiently apprised the court of the challenged findings (citing Daughtry v. Jet Aeration Co., 91 Wn.2d 704, 709-10, 592 P.2d 631 (1979))).

affirm the new trial on any tenable grounds so presented to the trial court, regardless of whether such ground was cited by the trial court as the reason for granting the new trial." (citing Worthington v. Caldwell, 65 Wn.2d 269, 396 P.2d 797 (1964))). CR 59(f) is intended to enable meaningful appellate review without resort to speculation as to the reasons for the trial court's order, Olpinski v. Clement, 73 Wn.2d 944, 951, 442 P.2d 260 (1968), not to force trial courts to write lengthy orders detailing every specific instance in the record supporting an order granting a new trial. Even assuming that the remaining findings would not, on their own, satisfy the requirements of CR 59(f),[5] the fact that the trial court believed Dake's counsel committed misconduct in excess of 14 times will not be disregarded merely because the trial court declined to specifically enumerate every single instance of attorney misbehavior.

C

Dake asserts that the trial court abused its discretion by granting Andren's motion for a new trial because none of the 14 findings setting forth specific examples of Dake's trial counsel's misconduct support the trial court's order granting a new trial. According to Dake, 5 of the trial court's 14 findings setting forth specific examples of misconduct are not supported by the record and the others involved instances of misconduct to which Andren did not object, or from which no prejudice could be found because Andren did object and the objection

---

[5] A point which Dake does not establish given that his argument addresses only two of the trial court's many other findings, specifically the findings that "[d]uring the course of the trial, [Dake's] counsel repeatedly violated Evidence Rules and the Court's rulings on Motions in Limine" and that Dake's counsel engaged in "repeated violations of ER 103(c)." Dake's briefing is completely silent as to how any of the trial court's other findings are insufficiently definite.

was sustained or a curative instruction was given. These arguments are not compelling.

1

Dake avers that Findings #2, #8, #9, #10, and #11 are not adequately supported by the record. Dake is only partially correct. While Finding #2 is not supported by substantial evidence in the record, Findings #8 through #11 are all supported by substantial evidence in the record.

Dake first asserts that Finding #2—noting that defense counsel, in violation of a motion in limine ruling, referred to a stipulated defense medical examination as an examination pursuant to court rules—is not supported by the record because the trial court never barred the parties from referring to stipulated defense medical examinations as examinations pursuant to court rule. This is so, Dake asserts, because the trial court's order in limine regarding the proper way to refer to such examinations barred his counsel from referring to such examinations as "an Independent or Court ordered medical examination or review," but not from referring to it as an examination pursuant to court rules. Dake is correct. During consideration of the pertinent motion in limine, the trial court explicitly instructed the parties that they could refer to such an examination as an "agreed-upon exam per court rule," or in any other fashion so long as it did not convey that the examination was independent or directly ordered by the court. Therefore, Finding #2 is not supported by substantial evidence in the record.

Dake next asserts that Finding #8—which states that Dake's counsel

attempted to introduce a photograph into evidence without proper foundation and that his questioning required Andren to testify to information the court had previously ruled could not be referenced—is not supported by the record and that Andren did not object at trial to this alleged misconduct. The record establishes that Dake is wrong. The offending exchange, during Andren's testimony on cross-examination, proceeded as follows:

> [Dake's counsel:] Ms. Andren, about this steel bar. This bar you're talking about is called an "impact bar"?
> [Andren:] Yes, that's correct.
> [Dake's counsel:] Now, you're not an expert in cars?
> [Andren:] No, I'm not an expert.
> [Dake's counsel:] You don't know whether it's steel or aluminum, do you?
> [Andren:] I only know what was on the paperwork[6] as well as what was told to me by the mechanic.
> . . . .
> [Dake's counsel:] . . . You do not know if it was steel or aluminum?
> [Andren:] No, I don't, other than the paperwork that I had.
> [Dake's counsel:] Okay. And, in fact, you know that you can purchase these parts on eBay, right?
> [Andren:] No. The parts were ordered from Mercedes and they were certified Mercedes parts.
> [Dake's counsel:] Okay. I'm going to move to mark an exhibit, Your Honor. There's two copies.
> THE CLERK: Defendant's Exhibit 163 marked for identification. . . .
> [Dake's counsel:] Ms. Andren, I'm going to show you what's marked as –
> THE COURT: Wait. You need to show –
> [Dake's counsel:] – Exhibit 163.
> THE COURT: - [Andren's counsel], make sure he has a copy of this.
> [Dake's counsel:] Yes, Your Honor.
> . . . .
> THE COURT: Okay. Is there an objection, [Andren's counsel]?
> [Andren's counsel]: Yes, Your Honor. I – there's –
> THE COURT: Okay.
> [Andren's counsel]: -- an authenticity problem. . . . I've just seen this.

---

[6] The trial court had previously ruled that the car repair paper work Andren received from the mechanics who fixed her car could not be referenced and was inadmissible.

12

At this point, the jury was removed from the courtroom and Andren's counsel clarified that he had never before seen the picture sought to be admitted and was objecting because Dake's counsel had not laid any foundation to establish what the picture showed. Thus, plainly, the record substantiates the trial court's finding that Dake's counsel attempted to present a photograph that he had not previously shown to Andren's counsel and had not laid any foundation for—presumably to support his assertion during questioning that the subject car parts could be purchased on Ebay—and that Andren's counsel objected. Substantial evidence supports Finding #8, and the record establishes that Andren's counsel objected to the conduct described therein.

Dake next asserts that the record does not support Finding #9—which notes that during an examination about Andren's medical history, Dake's counsel gratuitously stated, "You have a photographic memory too." Dake is again wrong. The record plainly supports this finding, Dake's counsel at trial did so state, and the statement had no bearing on the subject of his examination of Andren's medical records about her neck pain.[7]

Dake nevertheless asserts that this behavior could not possibly be found

---

[7] Dake's briefing also asserts that the statement about Andren having a photographic memory was within the context of a line of questioning trying to question her explanation for why there were inconsistencies between her testimony and the dates her medical records listed for when she started having neck pain. The record, however, shows that the photographic memory comment was completely unnecessary for that purpose given that Andren had already testified that she (1) could have tried to clarify the correct dates in her medical records with her doctors but claimed not to have bothered and yet also testified (2) that she was usually a very detail-oriented person. For the purposes of testing her credibility regarding her statements that she had not bothered to correct her medical records, the statement that she was usually very detail-oriented was sufficient to cast doubt on her statement that she had not bothered to ensure that the details of her medical records were accurate. Thus, the comment about having a photographic memory was plainly gratuitous.

to be misconduct because Andren's counsel did not object to the comment at trial. While Dake is correct that Andren's counsel did not object, that is simply not a requirement for the trial court to conclude that the comment constituted misconduct.[8] See Teter, 174 Wn.2d at 224-25 (identifying examples of counsel's repeated failure to comply with the court's standing order barring speaking objections as misconduct where no objection was noted in the record). Thus, Finding #9 is supported by substantial evidence in the record.

Dake next asserts that the record does not support Finding #10—which states that Dake's counsel repeatedly inquired during cross-examination of Andren about whether a particular car part was steel or aluminum, that Andren responded that she did not know, and that counsel then said something to the effect of "You want the jury to think it is steel, right?" Once again, Dake is wrong. The record plainly establishes that Dake's counsel asked Andren multiple times to identify a car part in a picture he was showing her as being made of either steel or aluminum. In response, Andren repeatedly answered that she had not seen the picture counsel was showing her before, that she did not know if the picture was of her vehicle, and that she could not identify the parts shown in the picture as either steel or aluminum. At that point, the following exchange occurred:

> [Dake's counsel:] You want the jury to think it's steel to make it seem like it's –
> [Andren's counsel:] Objection, Your Honor.
> THE COURT: I'll sustain the—I'll sustain the objection as to the

---

[8] An objection is not always required to establish that misconduct findings support a new trial order. See, e.g., Teter, 174 Wn.2d at 225 (noting that counsel's repeated, though not objected to, violations of the judge's order barring speaking objections constituted misconduct supporting a new trial order).

question. You can ask a question but . . .
[Dake's counsel:] You have no foundation for offering any testimony
whatsoever—
[Andren's counsel:] Objection. Argumentative.
THE COURT: Again, I'll sustain—
[Dake's counsel:] –about the metallic composition of these items—
THE COURT: [Dake's counsel], there's an objection. I'll sustain the
objection.

Plainly, the record supports the trial court's finding.

Dake also asserts that the statement that the trial court found to be misconduct was, in fact, not misconduct because his counsel was simply restating Andren's testimony. Dake is wrong. Andren never testified that the picture Dake's counsel was attempting to have her testify about showed steel or aluminum parts, and his statement that she wanted the jury to believe that the picture showed a steel part is not based on any of her prior testimony. Dake's counsel may have been attempting to address Andren's testimony regarding her belief that a part of her car that she believed was made of steel was damaged in the collision,[9] but showing her a picture she could not identify and then simply testifying for her that she wanted the jury to believe certain things about that picture when she did not say what counsel wanted to hear was not simply restating her prior testimony about her own vehicle. Finding #10 is supported by substantial evidence in the record.

Dake next asserts that the record does not support Finding #11—which states that Dake's counsel sought to inquire about mood disorder medications

---

[9] Indeed, Dake's counsel's goal of challenging Andren's credibility is apparent from his follow up statement, which he did not even bother to present in the form of a question, that Andren had no foundation for offering any testimony at all about the composition of her car parts. His willingness to completely disregard the rules of evidence to argue his point during Andren's cross-examination further supports the trial court's finding of misconduct.

15

during direct examination of the defense's medical expert that had been specifically ruled inadmissible prior to trial. Dake asserts that this finding is not supported by the record because (1) the record shows only that the expert offered testimony on this issue, not that Dake's counsel inquired about it, and (2) the record shows that there were no pretrial orders barring him from inquiring about mood disorder medications. Dake is, again, wrong.

The record shows that Dake's counsel sought to inquire about mood disorder medications. During his questioning of the defense expert witness, Dr. Klein, Dake's counsel asked him about pain medications that Andren's records showed that she had taken, leading to the following exchange:

> [Dr. Klein:] Well, there's Voltaren, which is a nonsteroidal anti-inflammatory agent; Lunesta, which is a medication for sleep; Topamax, which is a headache—for migraines; and Fioricet, which is also for headaches.
> [Dake's counsel:] Okay.
> [Dr. Klein:] And then there's a question of mood disorder.
> [Dake's counsel:] Okay.
> [Andren's counsel:] Your Honor, I'd move to strike.
> [Dake's counsel:] Your Honor, *I want to ask the witness if there's any pertinence to an opinion that he's given in his report on this issue*.

(Emphasis added.) Thus, Dake's counsel plainly sought to introduce testimony regarding mood disorder medications.[10]

Second, Dake is also incorrect that the trial court did not bar the admission of such testimony in its pretrial orders on motions in limine. While no order on a

---

[10] Additionally, even if Dake's counsel had not explicitly sought to introduce testimony regarding this issue, he nevertheless had a duty to inform his witness that the subject could not be discussed during testimony. See ER 103(c) ("In jury cases, proceedings shall be conducted, to the extent practicable, so as to prevent inadmissible evidence from being suggested to the jury by any means.").

motion in limine explicitly barred the admission of testimony regarding mood disorder medications, multiple pretrial orders pertained to the admission of evidence regarding Andren's prior usage of anxiety medications and the potential that some of her pain was related to depression or anxiety, and the entire area of inquiry was barred by the trial court's rulings. Therefore, we conclude that substantial evidence in the record supports Finding #11.

In summary, while Finding #2 is not supported by substantial evidence in the record, Findings #8 through #11 are supported by substantial evidence in the record.

2

Instead of contending that Findings #1, #3 through #7, and #12 through #14 are not supported by substantial evidence in the record, Dake contends that the trial court abused its discretion by relying on the misconduct set forth in those findings to support its new trial order. This is so, Dake asserts, because the misconduct found therein either (1) was not objected to at trial, (2) was objected to at trial and any resulting prejudice was cured when the objection was sustained, or (3) was objected to at trial and any resulting prejudice was cured by the court's instructions to the jury.

Dake asserts that Findings #5 and #6 do not support the trial court's order granting a new trial because Andren's counsel never objected to the conduct referenced in those findings. In Finding #5, the trial court identifies a point during the cross-examination of Dr. Marinkovich when Dake's counsel stated, "I think I've made my point already," in response to a sustained objection and a ruling

from the court that he could ask his question, but only with a different framing. Essentially, by declining to reframe the question and instead stating that he had already made his point, Dake's counsel admitted that the improper framing was the point of the question. In other words, the misconduct set forth in Finding #5 is that Dake's counsel deliberately asked an objectionable question for an improper purpose. Both the trial court's finding and the record establish that Andren's counsel objected to that misconduct. It did not cease to be misconduct to which Andren's counsel had objected simply because Dake's counsel then admitted that he had asked the question for an improper purpose and the trial court's finding refers to the admission.

In contrast, Dake is correct that the record indicates that the misconduct noted in Finding #6—that Dake's counsel made a gratuitous comment during the cross-examination of Andren's expert medical witness implying that Andren had failed to provide that expert with all of her medical records—was not specifically objected to by Andren's counsel.[11] However, Dake is wrong to assert that it necessarily follows that the misconduct therefore cannot support the trial court's new trial order. While an objection is generally required to establish that misconduct supports a new trial order, in instances wherein the trial court itself interjects to disapprove of counsel's behavior, particularly in instances wherein the court has previously warned counsel to avoid such behavior, an objection is

---

[11] Dake also presents a partial argument that the comment was an attempt to discredit the expert witness's credibility, rather than to collaterally attack Andren, and that it was therefore not misconduct. We disagree. The comment was plainly about Andren and all but directly stated that she was hiding parts of her medical history from her expert witness and, by extension, the jury.

not always necessary.  See, e.g., Teter, 174 Wn.2d at 224-25 (concluding that a trial court's repeated warnings to counsel to cease violating the trial court's ban on speaking objections, to which opposing counsel did not object, supported a new trial order).  Such are the circumstances herein.  The trial court itself admonished Dake's counsel after observing the gratuitous comment.  Furthermore, the court's admonishment referred counsel back to a previous warning the court had given to the effect that such gratuitous comments would not be tolerated.[12]  Thus, the trial court did not abuse its discretion by relying on Finding #6 to support its new trial order.

Dake next asserts that the examples of misconduct set forth in Findings #12 through #14 do not support the new trial order because (1) the trial court issued curative instructions to the jury that must have cured any potential prejudice regarding each instance of misconduct, and (2) the record does not contain any indication that Andren was prejudiced by the misconduct.  The trial court, however, explicitly found that its instructions regarding these findings did not cure the prejudice caused by Dake's counsel's misconduct, and Dake does not challenge this finding on appeal or present any argument that the trial court's finding is not supported by the record.  Thus, we reject Dake's assertion that Findings #12 through #14 do not support the trial court's order.  Furthermore, Dake's assertion that the record contains no evidence of prejudice is plainly

---

[12] Indeed, the record establishes that the trial court started issuing warnings to Dake's counsel regarding his gratuitous comments before trial even began.  Given the early and repeated admonitions from the trial court to cease making gratuitous comments, there can be no doubt that Dake's trial counsel was fully aware that his comments were improper, but nevertheless persisted in making them.

rebutted by the jury's verdict. Dake admitted liability for the collision at issue but the jury nevertheless returned a defense verdict. This supports the trial court's conclusion that the prejudicial effect of Dake's counsel's misconduct was not cured by the court's instructions to the jury. Accord Adkins v. Alum. Co. of Am., 110 Wn.2d 128, 143, 750 P.2d 1257, 756 P.2d 142 (1988) (presuming prejudice affected outcome when jury in retrial reached a verdict for the defense when the jury in the original trial had found defendant 80 percent negligent).

Dake next asserts that Findings #1, #3, #4, and #7 do not support the trial court's new trial order, even though supported by the record, because the misconduct set forth therein was objected to at trial and any resulting prejudice was cured when the objection was sustained. Thus, Dake concedes that those findings set forth instances of misconduct, but nevertheless asserts that (1) in each instance, the trial court sustained an objection to the improper behavior, thereby eliminating the possibility of prejudice, and (2) in the context of a five day trial the instances of misconduct noted in Findings #1, #3, #4, and #7 could not have been prejudicial in any way because of the length of trial. Dake is entirely wrong. First, repeatedly asking knowingly objectionable questions is misconduct and "[e]ven where objections are sustained, the misconduct is prejudicial because it places opposing counsel in the position of having to make constant objections. These repeated objections, even if sustained, leave the jury with the impression that the objecting party is hiding something important."[13] Teter, 174

---

[13] There can be no question that Dake's counsel knew, as the trial court found in Finding #4, that he was asking improper questions because by so asking, he violated multiple trial court rulings on motions in limine, including a ruling granting his own motion in limine. Stunningly, Dake asserts that his own motions in limine only applied to Andren's counsel, and that therefore

Wn.2d at 223 (citation omitted) (citing 14A KARL B. TEGLAND, WASHINGTON

PRACTICE: CIVIL PRACTICE § 30:33, 30:41 (2d ed. 2009)).  Second, Dake offers no

legal, nor logical, support for his argument that the prejudicial effect of

misconduct is negated in any way by how long it takes to complete a trial.[14]

Furthermore, the trial court explicitly found that the misconduct identified in these

findings was prejudicial and Dake does not assign error to that finding or present

any argument that the finding is not supported by the record in his opening

briefing.[15]

---

his counsel cannot be considered to have known that it was improper for him to ask questions violating the trial court's rulings on his motions.  Regardless of whether the trial court's rulings stated that it applied to specific counsel, the very fact that Dake's counsel attempted to bar Andren from seeking to admit certain evidence or engage in certain other behaviors means that he knew that such behavior was improper.  Therefore, Dake cannot now credibly assert that his counsel made an innocent mistake when he sought to admit inadmissible evidence or engaged in other improper behavior in violation of the court's rulings granting those motions in limine.

Furthermore, if Dake was correct that sustaining an objection always cured all prejudice caused by objectionable conduct, there would be no need for motions in limine.  Indeed, the entire purpose of motions in limine is "to dispose of legal matters so counsel will not be forced to make comments in the presence of the jury which might prejudice his presentation."  State v. Evans, 96 Wn.2d 119, 123, 634 P.2d 845, 649 P.2d 633 (1981).

[14] Essentially, Dake's argument appears to be that his trial counsel should be permitted to engage in some prejudicial misconduct so long as the majority of the time his counsel behaves properly.  He cites to no authority in support of this novel assertion.

[15] In his reply brief, Dake raises several new arguments not raised in his opening brief, including arguments challenging whether the record supports these findings.  Because Dake failed to present such arguments in his opening brief, they have been waived and we decline to consider them.  See Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992) (declining to consider argument raised for the first time in a reply brief).

We further note that Dake fails to cite to even a single case wherein an appellate court reversed a new trial order premised on the bad behavior of a lawyer during trial, as opposed to violations of evidentiary rules, by concluding that, although the record established that the bad behavior of trial counsel identified in a new trial order actually occurred and constituted misconduct, it was not prejudicial.  This is unsurprising.  We say this because the trial court, being able to observe the effect of any bad attorney behavior on the jury first hand, is in a far better position to determine the impact of a lawyer's bad behavior on the jury than is an appellate court, which is limited to reviewing only a transcript of the record from trial.  See Spencer, 6 Wn. App. 2d at 790.  While we are often able to determine from the "cold" record whether purportedly bad behavior occurred and whether it was, in fact, "bad," we are at a significant disadvantage, when compared to the trial court, in determining how the jurors may have reacted to such behavior.  Indeed, the record will rarely, if ever, include all of the information on which a trial judge would rely in making such a determination of prejudice.

We conclude that Findings #1, #3 through #7, and #12 through #14 support the trial court's new trial order.

3

Dake contends that the trial court abused its discretion when ordering a new trial because its findings are either unsupported by the record or do not support its order. While Finding #2 is not supported by substantial evidence in the record, and therefore does not support the new trial order, the trial court's other 13 specific examples of misconduct and the trial court's other unchallenged findings plainly support the trial court's order. The trial court set forth over a dozen specific examples of misconduct[16] and found not only that Dake's counsel engaged in misconduct, that the misconduct was objected to, that it was prejudicial, and that it was not cured by the court's instructions, but also found that the cumulative effect of the misconduct left it unable to conclude that Andren received a fair trial. This is more than sufficient to support its new trial order. See Teter, 174 Wn.2d at 223-25. Furthermore, Dake does not present any argument that the trial court abused its discretion by granting a new trial when all of its findings support the order other than Finding #2.[17] Therefore, we conclude that Dake has failed to establish that the trial court abused its discretion by granting the motion for a new trial.

---

[16] In addition to these examples, the trial court's order is further supported by the numerous examples of Dake's counsel's violation of the trial court's prohibition against speaking objections referenced in Andren's briefing. As in Teter, repeated violations of the trial court's order barring speaking objections herein constitutes misconduct supporting the order granting a new trial. See 174 Wn.2d at 224-25.

[17] The only argument Dake presents in his briefing is that it would constitute an abuse of discretion for the trial court to have granted a new trial based solely on the findings set forth in Findings #1, #3, #4, and #7.

III

Dake next contends that the trial court's order awarding Andren attorney fees as a sanction for his trial counsel's misconduct should be reversed because it was premised on the trial court's order granting a new trial. We reject this contention because the order granting a new trial is well supported by unchallenged findings of misconduct and such misconduct supports the trial court's order awarding fees as a sanction for Dake's counsel's improper behavior.

We review a trial court's decision granting or denying sanctions for abuse of discretion. Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp., 122 Wn.2d 299, 338, 858 P.2d 1054 (1993). A trial court has inherent equitable power to authorize the award of attorney fees in cases of bad faith litigation. In re Matter of Recall of Pearsall-Stipek, 136 Wn.2d 255, 266-267, 961 P.2d 343 (1998). "[A] trial court's inherent authority to sanction litigation conduct is properly invoked upon a finding of bad faith." State v. S.H., 102 Wn. App. 468, 475, 8 P.3d 1058 (2000). A finding of "inappropriate and improper" conduct "is tantamount to a finding of bad faith." S.H., 102 Wn. App. at 475 (citing Wilson v. Henkle, 45 Wn. App. 162, 175, 724 P.2d 1069 (1986)).

"The court's inherent power to sanction is 'governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.' Sanctions may be appropriate if an act affects 'the integrity of the court and, [if] left unchecked, would encourage future abuses.'" S.H., 102 Wn. App. at 475 (alteration in

23

original) (citation omitted) (quoting Chambers v. NASCO, Inc., 501 U.S. 32, 43, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991); Gonzales v. Surgidev Corp., 120 N.M. 151, 899 P.2d 594, 600 (1995)). Thus, a party whose misconduct results in an order granting a new trial "may properly be required to pay counsel fees to the opposing party as the price of another trial." State ex rel. Macri v. City of Bremerton, 8 Wn.2d 93, 105, 111 P.2d 612 (1941) (citing Moses v. Craig, 77 N.H. 586, 95 A. 148 (1915)).

Dake asserts that the trial court's order awarding sanctions in response to his trial counsel's misconduct was premised solely on the misbehavior set forth in the trial court's order granting a new trial and must be reversed if the new trial order is reversed. Because we decline to reverse the new trial order and the trial court herein determined that Dake engaged in inappropriate and improper conduct, Dake has failed to establish that the trial court's order awarding Andren attorney fees constitutes an abuse of discretion.

IV

Finally, Andren requests an award of attorney fees on appeal. We agree that Andren is entitled to an award of her reasonable attorney fees and costs on appeal.

Washington courts will only award fees as part of the costs of litigation if provision for an award of fees can be found in a contract, statute, or recognized ground in equity. Tradewell Grp., Inc. v. Mavis, 71 Wn. App. 120, 126, 857 P.2d 1053 (1993). Fees awarded as sanctions "should insure that the wrongdoer

does not profit from the wrong." Fisons Corp., 122 Wn.2d at 356 (citing Gammon v. Clark Equip. Co., 38 Wn. App. 274, 282, 686 P.2d 1102 (1984)).

Andren received an award of attorney fees from the trial court as an equitable sanction against Dake. We grant Andren an award of attorney fees on appeal on the same ground. This is proper because one of the purposes of the trial court's award of fees was to compensate Andren for having to undergo a trial that must now be repeated because of Dake's counsel's misconduct. It would defeat the purpose of that award, and let Dake profit from the misconduct of his counsel, if Andren was forced to pay additional litigation expenses to defend the trial court's order on appeal. To avoid incentivizing sanctioned parties from appealing in order to exhaust the benefit of any sanctions award granted by the trial court to their aggrieved opponent, we hold that Dake must compensate Andren for all of the costs of successfully remedying the harm resulting from the misconduct of his counsel at trial, including the cost of attorney fees incurred while defending the new trial order on appeal. Upon Andren's compliance with RAP 18.1, a commissioner of our court will enter an appropriate order.

Affirmed.

_Dwyer, J._

WE CONCUR:

_Hazelrigg, J._          _Leach, J._